J-S66021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DEVON O. SHEALEY | |
| Appellant | No. 186 WDA 2015 |

Appeal from the Judgment of Sentence Entered July 17, 2014
In the Court of Common Pleas of Beaver County
Criminal Division at No: CP-04-CR-2117-2012

BEFORE:  OLSON, STABILE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 24, 2016**

Appellant, Devon O. Shealey, appeals from the judgment of sentence entered in the Court of Common Pleas of Beaver County following Appellant's conviction for, *inter alia*, two counts of second degree murder, two counts of robbery, four counts of kidnapping, four counts of unlawful restraint, and possession with intent to deliver marijuana.[1]  Upon review, we affirm.

The charges against Appellant stem from the invasion of the home and shooting deaths of Richard Harper and his wife Demetria Harper committed

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant purports to appeal from both his judgment of sentence and the order of the trial court denying his post-sentence motion.  As our caption reflects, Appellant properly appeals from his judgment of sentence.

by Appellant and co-defendant Robert L. Burgess (Burgess) on June 30, 2008. The shootings occurred in the presence of the Harpers' two minor daughters, ages 10 and 8. As summarized by the trial court,

In the spring of 2008, Demetria and Margarette (Nay Nay) Moore (Moore) became acquainted through the activities of their respective children as residents in the same Second Avenue, Beaver Falls neighborhood, and over time, became close friends. The Harper family had relocated to Beaver Falls from El Paso, Texas. Moore had been familiar with the co-defendant, Burgess, since attending high school, lost touch with him through the years and resumed their relationship in 2007. Burgess lived on Letsche Street in the North Side section of Pittsburgh. Moore introduced Demetria to Burgess when Demetria transported Moore to the Burgess residence in early June, 2008. On at least two additional occasions, Demetria drove Moore to the Burgess home within a week or two of the first visit, during which [Appellant] was present. Demetria was introduced to [Appellant], also known as "D", through Burgess. At one of the meetings, Demetria advised [Appellant] and Burgess that she could obtain marijuana for an attractive price in El Paso, which prompted discussions among Demetria, [Appellant], Burgess and Moore and led to a plan by which [Appellant] and Burgess would front funds to Demetria for her to travel to El Paso, obtain marijuana and mail it to an address provided by Burgess. To assure Demetria's participation in the plan, a copy of Demetria's identification card, which included her address, was made by Burgess on a copier at his residence. On June 25, 2008, Moore drove Demetria to the Burgess residence where Demetria purchased a round trip airline ticket online utilizing the computer of Burgess by which Demetria would travel from Pittsburgh to El Paso and return to Pittsburgh. Moore then transported Demetria to her home in Beaver Falls where she packed a suitcase and was taken by Moore to the Pittsburgh International Airport. Upon arriving at the airport, Demetria and Moore met Burgess and another unidentified individual. Burgess provided Demetria with $1,500.00 in funds to purchase marijuana in Texas. Demetria departed thereafter and arrived in El Paso later that day. After several days of negotiations, Demetria, by way of arrangements made through LaDon Williams (Williams), a friend of Demetria in El Paso, she purchased four pounds of marijuana

for $800.00. The marijuana had an odor of gasoline, and Demetria and Williams attempted to remove the odor by way of a process of boiling vegetables in a pot while holding the marijuana above the steam that was generated. While in Texas from June 25, 2008, through June 29, 2008, Demetria remained in constant contact with Moore, who was in the presence of and staying at the residence of Burgess. [Appellant] was also present at the Burgess home during this time. Moore, at the direction and insistence of Burgess, sent numerous text messages to Demetria inquiring as to the progress of her efforts to obtain the marijuana. After acquiring the marijuana, Demetria falsely forwarded a text message to Moore that Demetria had been stopped by the police at a checkpoint, had been arrested and the marijuana confiscated, when in fact, she had the marijuana mailed to her home in Beaver Falls. According to Moore, Burgess doubted Demetria's truthfulness. Prior to Demetria returning to Pittsburgh, [Appellant] and Burgess drove to Baltimore, Maryland to visit Burgess' girlfriend, Antoinette Smothers (Smothers). Demetria returned home from Texas on June 29, 2008. Upon observing a package being delivered to the Harper residence on June 30, 2008, Moore telephoned Burgess while he was in Baltimore to report the delivery. Immediately thereafter, [Appellant] and Burgess departed Baltimore and returned to Pittsburgh in the early evening hours. Later that same night, [Appellant] and Burgess traveled to Beaver Falls, entered the Harper home wearing masks completely covering their faces, gloves and dark clothing and confronted Demetria and Richard at gun point in their second floor bedroom while the two children were present and demanded the return of the money previously provided and/or the marijuana. Demetria advised that the marijuana was in a box in the bedroom to which Burgess replied that they had no interest in the box. Demetria and Richard were taken to the basement at gunpoint and hog-tied by the hands and feet from behind with an electrical cord from a vacuum sweeper. The children were then escorted from the second floor bedroom to the basement and placed in a furnace room a short distance away from their parents whom they observed bound and face down on the basement floor. Shortly thereafter, [Appellant] shot Richard in the head and Burgess shot Demetria in the head. The children heard the two shots from their location in the furnace room and also their father groaning from his wound. [Appellant] and Burgess removed the box containing the marijuana and departed returning to Pittsburgh. The children

remained in the furnace room the entire night until approximately 11:00 a.m. on July 1, 2008, when their aunt, Joanne Vaughn (Vaughn), the sister of Richard, arrived at the house after spotting Richard's vehicle outside the residence at a time when he should have been at work. Richard and Demetria were deceased when discovered by Vaughn who called police. Within days of the killings, Cheryl Chambers (Chambers) and her daughter, Rachel Harden (Harden), a girlfriend of [Appellant] and mother of his child, observed [Appellant] in the possession of marijuana with an odor of gasoline attempting to remove the moisture and gasoline odor of the marijuana using a hairdryer.

Trial Court Opinion (T.C.O.), 12/31/14, at 5-9.

On July 17, 2014, the trial court sentenced Appellant to, *inter alia*, two consecutive terms of life imprisonment without the possibility of parole. Appellant timely filed a post-sentence motion. The trial court denied Appellant's post-sentence motion and prepared a detailed opinion. Appellant filed a direct appeal to this Court and, as ordered, a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Because Appellant raised the same issues in his Rule 1925(b) statement as in his post-sentence motion, the trial court did not write a separate Rule 1925(a) opinion. On appeal, Appellant repeats these assertions of error, reproduced below.

1. Whether the Appellant's conviction for kidnaping [sic] in regards to counts 10, 11, 12, and 13 should be reversed because the Commonwealth failed to present sufficient evidence establishing either the removal of the alleged individuals a substantial distance from where found, or their unlawful confinement for a substantial period in a place of isolation?

2. Whether the Appellant's conviction for unlawful restraint in regards to counts 26 and 27 should be reversed because the Commonwealth failed to present sufficient evidence establishing movement of the juvenile female 1/16/97, and juvenile female 10/20/99 into a furnace room to expose the alleged individuals to the risk of serious bodily injury?

- 4 -

3. Whether the Appellant's conviction for possession with intent to deliver marijuana should be reversed because the Commonwealth failed to present sufficient evidence establishing evidence that the Appellant manufactured, delivered or possessed with the intent to deliver marijuana in the jurisdiction of Beaver County?

4. Whether the trial court erred in admitting text messages between the phone numbers of (678) 836-9176 belonging to Demitria [sic] Harper and (412) 326-5320 belonging to Cheryl Chambers as the Commonwealth did not authenticate the messages as having been sent by Appellant?

5. Whether the trial court erred in admitting text messages between the phone numbers of (678) 836-9176 belonging to Demitria [sic] Harper and (412) 417-1354 belonging to Margaret Longmire (Moore) as the texts sent by Demitria [sic] Harper were not in furtherance of a conspiracy with Appellant?

6. Whether the trial court erred in admitting evidence regarding Appellant's incarceration for other crimes which unjustifiably blackened the character of the Appellant in the minds of the jury?

7. Whether the trial court erred in admitting testimony by Rachel Harden, regarding the co-defendant, Robert Burgess['] request that she ask Appellant if he had been questioned by authorities regarding this incident as the co-defendant's inquiry was completely irrelevant to the issue of Appellant's guilt or innocence and the prejudicial effect far outweighed any probative value?

8. Whether the trial court erred in admitting testimony by Cheryl Chambers, regarding the Appellant's involvement in her federal charge of obstruction of justice as this information was completely irrelevant to the issue of Appellant's guilt or innocence and the prejudicial effect far outweighed any probative value?

9. Whether the trial court erred in ruling that Appellant's "second chair" attorneys, not qualified under Rule 801 of the Rules of Criminal Procedure, could not participate in any cross examination of witnesses, thereby denying Appellant's right to

representation under the United States Constitution and the Pennsylvania Constitution?

10.    Whether the trial court erred in allowing the Commonwealth to amend count 28 of the criminal information to include convictions under 18 Pa.C.S.A. § 6105C just moments before the trial began and without putting the Appellant on notice of the expansion of this count, prejudicing his ability to prepare a defense?

11.    Whether the trial court erred in not declaring a mistrial or striking the testimony after the Commonwealth introduced hearsay testimony by Margarette Moore that she knew it was an individual named "D's" birthday, which was brought out immediately following an objection to her testifying to hearsay?

Appellant's Brief at 6-8.

Appellant first argues that there was insufficient evidence to prove, beyond a reasonable doubt, that he kidnapped Demetria and Richard Harper, and their two children. Appellant's Brief at 13-14. Appellant specifically argues that no evidence was introduced to establish that his movement of the victims "placed the family in isolation or increased their risk of harm" as required by 18 Pa.C.S.A. § 2901. Appellant's Brief at 14. Appellant claims that this is demonstrated by the fact that the victims were found "by the very first person who came to the door of their home the next morning." Appellant's Brief at 15.[2]

_____

[2] Within Appellant's first issue, he alleges that "[t]he verdict in regards to Counts 10, 11, 12, and 13 was against the weight of the evidence produced at trial in that Demetria Harper, Richard Harper, juvenile female (7/16/97), and juvenile female (10/29/99) were only moved from the first floor of their residence to the basement of their residence." Appellant's Brief at 14. This is Appellant's only mention that the verdict is against the weight of the
*(Footnote Continued Next Page)*

The Pennsylvania Crimes Code defines the offense of kidnapping as follows.

> **Offense defined.**—Except as provided in subsection (a.1), a person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions:
>
> (1) To hold for ransom or reward, or as a shield or hostage.
>
> (2) To facilitate commission of any felony or flight thereafter.
>
> (3) To inflict bodily injury on or to terrorize the victim or another.
>
> (4) To interfere with the performance by public officials of any governmental or political function.

18 Pa.C.S.A. § 2901(a). Our Supreme Court has clarified that, "for purposes of Pennsylvania's kidnapping statute, a 'place of isolation' is not geographic in nature, but contemplates the confinement of a victim where he or she is separated from the normal protections of society in a fashion that makes discovery or rescue unlikely." *Commonwealth v. Rushing*, 99 A.3d 416, 425 (Pa. 2014).

---

*(Footnote Continued)* ———————

evidence. Further, Appellant only makes sufficiency of the evidence arguments. Accordingly, we view his first issue as solely addressing the sufficiency of the evidence. Nevertheless, the trial court adequately addresses Appellant's bald weight of the evidence claim in its opinion. *See* T.C.O., 12/31/14, at 17-19.

The trial court, mindful of the applicable standard of review[3], addressed Appellant's sufficiency of the evidence argument as follows:

[Appellant]'s position that the movement of the entire family from the second floor to the basement did not increase the risk of harm when the parents were hog-tied and shot to death in the basement, and the children being placed in fear through the use of weapons, observing their parents bound and lying on the basement floor, forced into the furnace room and then hearing the shots that killed their parents, is simply inconsistent with the facts. Far from being incidental to the other crimes, [Appellant]'s confinement of the victims was, as in **Rushing**,

_____

[3] In reviewing a claim of the insufficiency of the evidence, the court is guided by the well–established principles summarized in **Commonwealth v. Gooding**, 818 A.2d 546, 549 (Pa. Super. 2003)(citing **Commonwealth v. DiStefano**, 782 A.2d 574, 582 (Pa. Super. 2001)), as follows:

The standard we apply in reviewing the insufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

T.C.O., 12/31/14, at 4.

> *supra*, with the intent to commit the other crimes and to facilitate their escape. The court therefore finds that the Commonwealth sufficiently established that [Appellant] removed all four victims a substantial distance from the place where found and confined the victims for a substantial period in a place of isolation with the intention to inflict bodily injury on or to terrorize the victims.

T.C.O., 12/31/14, 15-17. Our review of the record leads us to agree with the trial court that the Commonwealth indeed provided sufficient evidence to prove, beyond a reasonable doubt, that Appellant kidnapped Demetria Harper, Richard Harper, and their two children. Appellant is not entitled to relief on his first issue.

In his second issue, Appellant contends that the Commonwealth failed to present sufficient evidence to convict Appellant of unlawful restraint. Appellant argues the evidence was insufficient to convict because he moved the children only to the furnace room to save the children from Burgess' intention to kill them. Appellant's Brief at 15.

As the trial court stated,

> The offense of unlawful restraint of a minor requires that the defendant knowingly restrain a person under 18 years of age in circumstances exposing her to risk of serious bodily injury. 18 Pa.C.S. § 2902(b)(1). The Commonwealth is required to prove that the defendant placed another in actual danger of serious bodily injury. *Commonwealth v. Schilling*, 288 Pa. Super. 359, 431 A.2d 1088 (Pa. Super. 1981). [Appellant] contends that testimony was elicited that in order to protect the children from the co-defendant's intention to kill them, he moved them to the nearby furnace room in the basement so as not to expose them to the risk of serious bodily injury. However, as indicated by the court in *Campbell*, [509 A.2d 394 (Pa. Super. 1986)], the defendant's explanation of removing the child from the zone of danger created by the defendant's brother who was doing the shooting was for the determination of the jury, which could

believe all, part or none of the testimony. The identical rational [sic] is applicable in the present case with regard to [Appellant]'s alleged protection of the children. As the Commonwealth correctly indicates in its brief, the circumstances regarding the potential for serious bodily injury are not limited to the events taking place in the basement. The testimony of the youngest minor victim disclosed that a gun was pointed at her head while on the second floor and she was told to shut up. Subsequently, both children were accompanied at gunpoint to the basement and placed in the furnace room near the area where their parents were lying on the floor and later shot. The bullet which killed Richard exited his head and was never found despite the thorough efforts of investigators. Viewing the above evidence in the light most favorable to the Commonwealth, the jury could have reasonably concluded that the children were exposed to the risk of serious bodily injury resulting from the actions of [Appellant] and the co-defendant.

T.C.O., 12/31/14, 19-20. We agree with the trial court that the record supports Appellant's conviction for unlawful restraint. Accordingly, Appellant is not entitled to relief on his second issue.

Appellant's third claim is that the Commonwealth failed to produce sufficient evidence to prove his guilt beyond a reasonable doubt regarding possession with the intent to deliver (PWID) marijuana in Beaver County. Appellant's Brief at 15-16. Appellant alleges that the evidence presented was connected to Allegheny County, not Beaver County. Appellant's Brief at 16.

Upon review, the trial court stated:

To determine whether the Commonwealth has presented sufficient evidence to sustain a conviction for possession with intent to deliver, all of the facts and circumstances surrounding the possession are relevant and the elements of the crime may be established by circumstantial evidence. *Commonwealth v. Little*, 879 A.2d 293 (Pa. Super. 2005). The possession with intent to deliver can be inferred from the quantity of the drugs

- 10 -

possessed along with the other surrounding circumstances. ***Id.*** In the instant case, the following facts and circumstances provide sufficient evidence to establish that [Appellant] maintained possession of the marijuana with intent to deliver it while in Beaver County. As a result of the conspiracy between [Appellant], Burgess, Demetria and Moore, Demetria was provided with $1,500.00 in funds to travel to El Paso, Texas to purchase marijuana and have it sent to Pennsylvania. The plot was hatched when Demetria indicated to [Appellant] and co-defendant that she could obtain marijuana at an attractive price through her contacts in Texas. Demetria provided, upon demand of the co-defendant, Burgess, her identification which was copied to indicate her trustworthiness. After arriving in Texas, Moore and Burgess communicated with Demetria through numerous text messages regarding her progress in obtaining the marijuana while [Appellant] was present. Demetria purchased four pounds of marijuana for $800.00, and with Williams, steamed it in an attempt to remove the gasoline odor. After Demetria's return to Pennsylvania and upon the arrival of the package to her residence, Moore contacted Burgess to advise him of its delivery, and [Appellant] and Burgess immediately departed Baltimore and returned to Pittsburgh on June 30, 2008. That same night, [Appellant] and Burgess proceeded to the Harper residence and after killing Richard and Demetria, took with them the marijuana with the odor of gasoline. On or about July 4 or 5, 2008, [Appellant] was observed by Chambers and her daughter, Rachel Harden, blow-drying the marijuana smelling of gasoline at their residence. The quantity of marijuana, taken together with the above–surrounding circumstances, provided sufficient evidence from which the jury could infer [Appellant]'s intent to possess the marijuana for delivery when removing it from the Harper residence in Beaver Falls.

T.C.O., 12/31/14, at 23-24. Our review of the record supports the conclusion of the trial court that sufficient evidence was presented to convict Appellant of PWID in Beaver County. As such, Appellant is not entitled to relief on his third issue.

Appellant's fourth through ninth issues, as well as his eleventh issue, challenge evidentiary rulings.  Our standard of review for admissibility of evidence is well-established.

> The admission of evidence is solely within the province of the trial court, and a decision thereto will not be disturbed absent a showing of an abuse of discretion.  An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias[,] or ill-will discretion . . . is abused.

***Commonwealth v. Murray***, 83 A.3d 137, 155-56 (Pa. 2013) (citations and quotation marks omitted).

In his fourth issue, Appellant argues that the trial court erred in admitting text messages between the phone numbers of (678) 836-9176 belonging to Demetria Harper and (412) 326-5320 belonging to Cheryl Chambers.  Appellant argues that the Commonwealth did not authenticate these messages as having been sent by Appellant, and that multiple individuals had access to Cheryl Chambers' phone.  Appellant therefore argues that these text messages were improperly admitted.  Appellant's Brief at 16.

In addressing this fourth issue, the trial court cogently stated:

> Viewing the question of the authentication of text messages as an issue of first impression in Pennsylvania, the [C]ourt in ***Commonwealth v. Koch***, 83 A.3d 137 (Pa. Super. 2011) concluded that electronic communications such as e-mail and instant messages can be authenticated within the framework

- 12 -

of Rule 901 of the Pennsylvania Rules of Evidence on a case-by-case basis.[4]   The [C]ourt further found that e-mails and text messages are documents subject to the same requirements for authentication as non-electronic documents generally, either by direct proof or circumstantial evidence.   Distinguishing text messages from other electronic documents because they are sent from the cellular telephone bearing the telephone number identified in the text message and received on a telephone associated with a number to which they are transmitted, the court observed that the identifying information is contained in the text messages on the cellular telephone.   The court noted, however, that cellular telephones are not always exclusively used by the person to whom the telephone number is assigned. . . .

In the present case, the Commonwealth, prior to introducing the subject text messages, presented circumstantial evidence to properly authenticate the text messages on the Chambers/Harden cellular telephone to demonstrate that [Appellant] was sending and receiving text messages from Demetria.  Moore identified [Appellant] as a participant with her, Burgess and Demetria in the planning stages of obtaining marijuana in Texas.  Chambers and both her daughters, Rachel and Rochelle Harden, testified that they lived in the same building but in separate apartments and saw each other on a daily basis.  [Appellant] was either residing with Rachel and/or in daily contact with the three of them.  Rachel acknowledged that [Appellant] regularly used her cellular telephone.  Chambers and her two daughters all testified that they never knew or had any contact by way of text messaging or otherwise, with Demetria.  No evidence was presented that anyone other than [Appellant] and Rachel Harden used the cellular telephone.

T.C.O., 12/31/14, at 26-28.  Based on the record, we find that the trial court

did not err in finding that the Commonwealth properly authenticated the text

_____

[4] "Pennsylvania Rule of Evidence 901 provides that authentication is required prior to admission of evidence. The proponent of the evidence must introduce sufficient evidence that the matter is what it purports to be." **Id.** at 1002; **See** Pa.R.E. 901(a).

messages sent from Chambers' telephone as sent by Appellant to Demetria Harper. As such, the trial court did not abuse its discretion in admitting the text messages into evidence. Appellant is not entitled to relief on this issue.

Appellant's fifth issue is that the trial court erred in admitting text messages between the phone numbers of (678) 836-9176 belonging to Demetria Harper and (412) 417-1354 belonging to Margaret Longmire (Moore). Appellant argues that the text messages sent by Demetria Harper to Moore were not in furtherance of the conspiracy made with Appellant. Appellant's Brief at 16. Appellant claims that because Demetria had changed her plans, she had broken from the conspiracy and, therefore, the messages were no longer in furtherance of the conspiracy. Appellant's Brief at 17.

As the trial court stated,

[i]n addressing a defendant's claim of withdrawal from a conspiracy, the [C]ourt, in *Commonwealth v. Lloyd*, 878 A.2d 867, 871 (Pa. Super. 2005), set forth the following:

The law is equally settled that a person will not be considered "an accomplice in an offense committed by another person if he terminates his complicity prior to the commission of the offense *and* (i) wholly deprives it of effectiveness in the commission of the offense; or (ii) gives timely warning to the law enforcement authorities or otherwise makes proper effort to prevent the commission of the offense. 18 Pa.C.S.A. § 306(f)(3)(i)-(ii)(emphasis added). Finally, "if an individual abandons the agreement, the conspiracy is terminated as to him *only if and when* he advises those with whom he conspired of his abandonment or he informs the law enforcement authorities of the existence of the conspiracy and of his participation therein." 18 Pa.C.S.A. § 903(g)(3) (emphasis added).

In the instant case, Demetria, pursuant to the conspiracy, purchased the marijuana in Texas with funds provided to her by co-conspirator, Burgess, and mailed it to her home in Pennsylvania. By lying to Moore, Burgess and [Appellant], Demetria did not express her intention to withdraw from the conspiracy to acquire the marijuana. Demetria did not advise her co-conspirators of her abandonment or inform law enforcement authorities of the existence of and her participation in the conspiracy to acquire the. marijuana. Nor did she deprive the conspiracy of effectiveness in the commission of the acquisition of the marijuana or give timely warning to law enforcement authorities or make proper effort to prevent the commission of the offense. [Appellant] did not establish that Demetria withdrew from the conspiracy.

T.C.O., 12/31/14, at 36-37. Our review of the record leads us to conclude that the trial court did not abuse its discretion in admitting these text messages into evidence. Appellant is not entitled to relief on his fifth issue.

Appellant next argues that the trial court erred by admitting evidence of Appellant's incarceration for other crimes as testified to by Cheryl Chambers, Isaiah Pallet, Samuel Paster, and Ryan Weyman. Appellant argues that admitting this evidence "unjustifiably blackened" his character in the minds of the jury. Appellant's Brief at 17. Appellant relies on the rule that "[e]vidence of a defendant's prior arrest or incarceration is generally inadmissible because the trier of fact may infer past criminal conduct by the defendant from such evidence. Reversible error occurs where evidence of prior criminal conduct unjustifiably blackens the character of a defendant in the minds of the jury." Appellant's Brief at 17 (citing **Commonwealth v. Williams**, 660 A.2d 1316 (Pa. 1995) (citation omitted)). Appellant acknowledges that such evidence is generally admissible "where it tends to

establish motive, intent, absence of mistake or accident, commission of the crime, or where it was part of a chain or sequence of events which formed the history of the case." Appellant's Brief at 18 (citing **Commonwealth v. Ross**, 195 A.2d 81 (Pa. 1963)). However, Appellant claims that the evidence regarding his incarceration for other crimes does not meet any of the exceptions and that the defense never opened the door to allow in this testimony. Appellant's Brief at 18-19.

The trial court addressed this issue as follows:

> Prior to trial, [Appellant] filed a motion to prohibit introduction of any evidence of [Appellant]'s incarceration for other crimes. The court denied [Appellant]'s motion on the basis of the "complete story" exception to the general proscription against evidence of other crimes where such evidence is part of the chain or sequence of events which become part of the history of the case and form part of the natural development of the facts. However, the court also prohibited the Commonwealth from eliciting any testimony regarding the crimes for which [Appellant] was incarcerated during his discussions with Paillett and Chambers. The conversations of [Appellant] with Paillett and Chambers must be viewed in the context of the relationship that he had with each individual.

> . . . .

> Evidence of distinct crimes are not admissible against a defendant being prosecuted for another crime solely to show his bad character and his propensity for committing criminal acts. **Commonwealth v. Lark**, 518 Pa. 290, 543 A.2d 491 ([Pa.] 1988) (Citations omitted). However, evidence of other crimes and/or violent acts may be admissible in special circumstances where the evidence is relevant for some other legitimate purpose and not merely to prejudice the defendant by showing him to be a person of bad character. **Lark**, **supra**, at 497 (Citations omitted). . . . Another "special circumstance" where evidence of other crimes may be relevant and admissible is where such evidence is part of the chain or sequence of events which

become part of the history of the case and form part of the natural development of the facts. *Id.* (Citation omitted). This "special circumstance" is also known as the "complete story" rationale, i.e., evidence of other criminal acts is admissible "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place". *Id.* (Citations omitted).

T.C.O., 12/31/14, at 42-44. Additionally, the trial court noted:

Prior to Chambers and Paillett testifying, Rachel Harden testified, on both direct and cross-examination, that [Appellant] was in jail. In response to a question by the assistant district attorney asking if she was having telephone contact with [Appellant] at or around the time of meeting with the police, she responded that she was, and that he was in jail (T.T. Vol. V, Pg. 111). When asked on cross-examination whether she spoke to [Appellant] prior to meeting with police, she responded that she did not, and that he was in jail (T.T. Vol. 5, Pg. 130). In neither instance did defense counsel object or request a cautionary instruction. Thus, at the time of the testimony elicited from Chambers and Paillett, the jury was aware that [Appellant] had been incarcerated by way of the testimony of [Appellant]'s girlfriend, Rachel.

. . . .

Based upon the manner in which the evidence of [Appellant]'s incarceration was presented, the circumstances under which the witnesses explained their contact with [Appellant] while he was incarcerated so as to complete the natural development of the case, and the court's cautionary instruction to the jury, no error occurred in the admission of this evidence.

T.C.O., 12/31/14, 46-47. We agree with the trial court that the contested testimonial evidence regarding Appellant's prior incarcerations was properly admitted and, further, that Appellant opened the door to this testimony. The trial court did not abuse its discretion in admitting this evidence. Appellant is not entitled to relief on his sixth issue.

In his seventh issue, Appellant argues that the trial court erred in admitting Rachel Harding's testimony that the co-defendant Burgess asked her if authorities had questioned Appellant. Appellant argues that the introduction of Burgess' inquiry into whether Appellant had been questioned by the police regarding the Harper murders "served no relevant purpose as to Appellant's guilt or innocence." Appellant's Brief at 20. Appellant claims that because this question was allegedly asked after the events of this case took place--according to the Commonwealth's timeline, the sole purpose of the statement was to permit an inference of Appellant's guilt. *Id.*

As the trial court notes, Appellant fails to develop this relevancy claim adequately. T.C.O., 12/31/14, at 47. Further,

> Contrary to [Appellant]'s assertion, co-defendant Burgess' desire to know whether [Appellant] had talked to police tended to connect him and Burgess as co-conspirators directly to the murders and demonstrates consciousness of guilt, as well as a continued attempt to conceal their participation in the killings. This evidence was therefore relevant to the guilt or innocence of [Appellant], and the probative value outweighed any prejudice to [Appellant].

*Id.*, at 48-49. Accordingly, we do not find that the trial court abused its discretion in admitting this evidence. Appellant is not entitled to relief on this claim.

In his eighth issue, Appellant contends the trial court erred in admitting the testimony of Cheryl Chambers regarding Appellant's involvement in her federal obstruction of justice charge. Appellant alleges that this testimony was irrelevant to the issue of Appellant's guilt or

innocence. Appellant contends that the prejudicial effect of this testimony far outweighed its probative value. Appellant's Brief at 20.

The trial court addressed this claim as follows:

During the cross-examination of Chambers, defense counsel questioned her extensively regarding her Federal conviction for obstruction of justice and the plea agreement that included her cooperation against [Appellant] and co-defendant Burgess. The Commonwealth then on re-direct examination followed with an inquiry of the facts that led to the charge against Chambers. She testified that the offense resulted from [Appellant]'s request that she pay off the victim of a robbery with which [Appellant] had been charged in an effort to prevent the victim from testifying against [Appellant]. [Appellant] claims that the information elicited by the Commonwealth regarding [Appellant]'s involvement in the obstruction of justice case against Chambers was irrelevant to the issue of [Appellant]'s guilt or innocence and the prejudicial effect outweighed any probative value. The principles discussed above relating to the evidence of [Appellant]'s incarceration and the defense opening the door into potential objectionable testimony are equally applicable to the above evidence. Defense counsel opened the door by asking Chambers about her conviction which then permitted the Commonwealth to further inquire as to the circumstances which led to the filing of the charge. In addition, since defense counsel attempted to impeach Chambers' credibility regarding her motive for testifying against [Appellant], the Commonwealth was properly permitted to delve into the circumstances of the offense. The probative value of this evidence was not outweighed by any prejudice to [Appellant].

T.C.O., 12/31/14, 50-51. For the foregoing reasons, we find that the trial court did not abuse its discretion in admitting this evidence. Appellant is not entitled to relief on his eighth issue.

In his ninth issue, Appellant asserts the trial court denied him his right to representation under the United States Constitution and the Pennsylvania Constitution by not permitting second chair counsel to participate in any

- 19 -

cross-examination of witnesses. Appellant asserts this claim despite acknowledgment that "second chair" attorneys who do not meet the educational and experience requirements under Pa.R.Crim.P. 801 are not qualified to try capital cases. Nonetheless, Appellant alleges the trial court abused its discretion by imposing a blanket rule that his "second chair" attorneys could not participate. Appellant claims the trial court was required to consider whether each witness would have provided only perfunctory evidence when weighing whether Appellant's request should be granted. Appellant's Brief at 21.

Pennsylvania Rule of Criminal Procedure 801 sets forth the qualifications defense counsel must meet in order to try a capital case. It is uncontested that Appellant's "second chair" attorneys did not meet the criteria under this Rule. The trial court noted the following:

> The Comment to [Rule 801] further indicates that 'The educational and experience requirements of the rule may not be waived by the trial or appellate court.' The Comment further addresses a role of "second chair" attorneys: 'An attorney may serve as 'second chair' in a capital case without meeting the educational or experience requirements of this rule. 'Second chair' attorneys may not have primary responsibility for the presentation of significant evidence or argument, but may present minor perfunctory evidence or argument, if deemed appropriate in the discretion of the court.'

> Our Supreme Court has previously held that an indigent defendant is entitled to free counsel but not to free counsel of his choice, and although the right to counsel is absolute, there is no absolute right to particular counsel. ***Commonwealth v. Tyler***, 468 Pa. 193, 360 A.2d 617[, 619] (Pa. 1976) (Citations omitted).

T.C.O., 12/31/14, at 52-53. We find that the trial court did not abuse its discretion by not allowing Appellant's "second chair" attorneys to cross-examine witnesses. We note Appellant asserts this issue without citation to any authority or without any argument as to how the denial of his choice of counsel to present "perfunctory" evidence deprived him of a fair trial. Appellant is not entitled to relief on his ninth issue.

In his tenth issue, Appellant contends that the trial court erred when it allowed the Commonwealth to amend Count 28 of its charge for persons not to possess to include convictions under 18 Pa.C.S.A. § 6105(c) shortly before trial. Appellant's Brief at 22. Appellant argues that he was not put on notice of this expansion of his charges and, therefore, his ability to prepare a defense was impaired. Appellant notes that the trial court denied his request for a bill of particulars and argues that, had the Commonwealth responded to Appellant's request for a bill of particulars, he would have been able to prepare his defense properly and would not have been surprised by the amendment to Count 28. Appellant's Brief at 23.

Rule 564 of the Pennsylvania Rules of Criminal Procedure provides that "[t]he court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense." Pa.R.Crim.P. 564. In addressing this claim, the trial court, after noting the criteria to be

- 21 -

considered when ruling upon whether an amendment should be allowed, held:

> [Appellant] was initially charged in the information at Count 28 with violation of the Pennsylvania Uniform Firearms Act, 18 Pa.C.S. § 6105(b), person not to possess firearm, after having previously been adjudicated as a juvenile of aggravated assault and robbery, which are specifically enumerated offenses prohibiting a person from possessing a firearm. Prior to trial, the Commonwealth requested and the court granted, over [Appellant]'s objection, an amendment to Count 28 to include 18 Pa.C.S. § 6105(c), based on [Appellant]'s conviction for possession with intent to deliver five grams of crack cocaine. . . .
>
>    . . . .
>
> In the present case, the crime specified in the original information contained the same basic elements and evolved from the same factual situation as the crime in the amended information, and therefore, [Appellant] was placed on notice of the alleged criminal conduct, i.e., person not to possess a firearm, and was not prejudiced by the amendment. In addition, [Appellant] failed to allege that the amended information required a change in any defense strategy. The court further notes that [Appellant] makes no argument with respect to [Appellant]'s conviction pursuant to 18 Pa.C.S. § 6105(b), thus demonstrating the absence of any prejudice.

T.C.O., 12/31/14, 54-57. Upon review, we do not find any error on the part of the trial court in permitting the amendment. Appellant has not demonstrated that he suffered prejudice because of the amendment. *See Commonwealth v. Mentzer*, 18 A.3d 1200 (Pa. Super. 2011) (Appellant not entitled to relief where he was not prejudiced by amendment). We therefore deny relief to Appellant on this tenth issue.

In his eleventh and final issue, Appellant asserts that the trial court erred by not declaring a mistrial after Commonwealth witness Margarette

Moore testified to a discussion she heard between Demetria Harper and an individual known as "D" that it was "D's" birthday. Appellant claims this was inadmissible hearsay and that the trial court should have declared a mistrial. Appellant's Brief at 23-24.

It appears that Appellant's objection is to the following testimony wherein Moore testified that "D," later identified as Appellant, indicated he was excited about his birthday.

> Q: Okay. And was there any other discussion between Mr. Burgess, D, and Demetria around that time?
>
> A: No, they was just conversating. He was excited, something about his birthday, and he was leaving.

N.T. Jury Trial, 6/18/14, at 23. In responding to this claim, the trial court stated:.

> [Appellant]'s objection as to hearsay is unfounded because [Appellant]'s statement regarding his birthday was an admission by a party opponent as defined in Rule 803(25)(A) of the Pennsylvania Rules of Evidence as an exception to the hearsay rule. Party admissions are not subject to the hearsay exclusion, because it is fair in an adversary system that a party's prior statements be used against him if they are inconsistent with his position at trial. *Commonwealth v. Edwards*, Pa. 151, 903 A.2d 1139, 1157-1158 (Pa. 2006). In criminal cases, a defendant's out-of-court statements are party admissions and are exceptions to the hearsay rule. *Id.*
>
> The court concludes that Moore's testimony as to her observations of [Appellant] and the statements he made regarding his birthday and leaving were properly admitted, and therefore, neither a mistrial nor striking them from the record was warranted. The court further notes that during the subsequent testimony of [Appellant]'s girlfriend, Rachel Harden, she, in answer to a question posed by the assistant district

- 23 -

> attorney, advised that [Appellant]'s birthday was June 23, to which no objection was raised by defense counsel.

T.C.O., 12/31/14, at 58-59. We find no abuse of discretion on the part of the trial court in declining to grant a mistrial based upon this evidentiary objection. We note in passing that while Appellant raised this issue on appeal, Appellant completely fails to explain why this alleged error, even if inadmissible hearsay (which we find it was not), was prejudicial enough to warrant a mistrial. Appellant is not entitled to relief on this final claim.

After careful review of the parties' briefs, the certified record on appeal, and relevant case law, we conclude that the trial court's opinion, authored by Judge John P. Dohanich, cogently disposes of all of Appellant's issues. We therefore affirm the trial court's judgment of sentence, and adopt the well-reasoned opinion of the trial court as the decision of this Court. We direct that a copy of the trial court's December 31, 2014 opinion be attached to any future filings in this case.

Judgment of sentence affirmed.

Judge Olson joins this memorandum.

Judge Strassburger files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/24/2016

- 24 -